UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARNELL DONTE RISPER,

    Defendant.
_____/

Case No. 1:24-cr-124

Hon. Hala Y. Jarbou

## OPINION

Defendant Darnell Donte Risper has been charged with one count of being a felon in possession of a firearm and ammunition. He asks the Court to suppress evidence obtained by the police from his vehicle during a traffic stop. (ECF No. 37.) The motion is supported by a brief and a supplemental brief. (ECF Nos. 38, 40.) The Court also held a hearing on the motion on February 11, 2025. After considering the arguments and evidence, the Court will deny the motion.

### I. FACTS

While Risper was driving his vehicle in Lansing, Michigan, he made a turn onto a private roadway without using his turn signal. After he did so, Michigan State Police Troopers Golden and Morgan activated the emergency patrol lights on their vehicle in order to pull him over.[1] Risper then turned into the parking lot of an apartment building and stopped.

Trooper Golden's bodycam video shows that Golden parked behind Risper's vehicle and then approached Risper's driver's side door. (Golden Bodycam, 21:27:36,[2] ECF No. 41-1.) Meanwhile, Trooper Morgan approached Risper's vehicle from the passenger side and shined his

---

[1] Golden also believed that Risper was driving with a noisy muffler; Risper disputes that assertion, but that dispute is irrelevant because Risper concedes that the traffic stop was valid.

[2] The Court will refer to the timestamps displayed in the upper right corner of the videos.

flashlight into the vehicle and at Risper.  (Morgan Bodycam, 21:27:36, ECF No. 41-2.)  Risper rolled down his windows partway and gave Golden his driver's license.  Golden asked Risper questions about where he worked, where he was traveling, and why.

Golden then asked Risper to step out of vehicle, saying, "I'm going to have you hop out and talk to me right in front of the patrol car." (Golden Bodycam, 21:28:08.)  He also asked Risper whether he possessed any sharp objects and whether he consented to a search of his person.  Risper consented to the body search and both he and Golden opened his door.  Risper then got out of his seat and stood up with his back to the door opening.  Golden asked him to "slide that way," motioning toward the back of the car.  (*Id.*, 21:28:36.)  Risper asked a question that is not comprehensible from the audio.  Golden again told him to "slide that way," gesturing toward the back of the car.  Risper did not comply.  Instead, he asked whether he could close his door.  (*Id.*, 21:28:43.)

While Golden and Risper were talking, Morgan looked into the back of Risper's car through the car windows.  Morgan then walked around the front of the car toward the driver's side. (Morgan Bodycam, 21:28:44.)

Meanwhile, Risper remained in place.  Golden asked him, "Why do you want to close your door so bad?" (Golden Bodycam, 21:28:48.)  Risper responded that Golden had asked him to step outside of his car and he did not consent to a search of his car.

At about that point, Morgan shined his flashlight into the car through the gap between the open car door and the frame of the car.  (Morgan Bodycam, 21:28:50.)  He saw a handgun lying partially underneath the driver's seat.  (*See* Photograph of Pistol, ECF No. 41-4.)[3]  He then walked

---

[3] Risper presented an enlarged version of the same photograph at the motion hearing, identified as Exhibit I-1.

2

quickly over to Risper, pulled him away from the car door, and helped Golden secure him in handcuffs. (Morgan Bodycam, 21:28:55.)

Golden and Morgan brought Risper over to the police cruiser and allowed him to lean back on the hood of the vehicle. Golden explained to him, "We want to get you under control . . . because if I see you reaching for a gun then things get escalated." (Golden Bodycam 21:29:43.)

Defendant argues that the officers' conduct violated his Fourth Amendment rights. He asks the Court to suppress evidence of the firearm and ammunition.

## II. Law

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). But a traffic stop that is "lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A traffic stop "must . . . last no longer than is necessary to effectuate the purpose of the stop," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). In other words, officers generally may not prolong a traffic stop "'beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation" and to "attend to related safety concerns." *Rodriguez*, 575 U.S. at 350-51 (quoting *Caballes*, 543 U.S. at 407). "[T]he permissible duration of a roadside seizure is tightly tethered to the mission of the traffic stop." *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020). "Authority [to continue the stop] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354. Thus, a traffic stop potentially violates the Fourth Amendment "if it is prolonged beyond the time reasonably required" to issue a ticket. *Id*. at 354-55 (quoting *Caballes*, 543 U.S. at 407).

3

As part of any traffic stop, officers may check the driver's license, vehicle registration, and insurance, ask "context-framing" questions about travel history and plans, and determine "whether there are outstanding warrants against the driver." *Id.* at 355. They also may order the car's occupants to step out of the vehicle so that the officers can safely complete their duties. *United States v. Morgan*, 71 F.4th 540, 543 (6th Cir. 2023) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). None of the foregoing tasks impermissibly prolongs the duration of a traffic stop.

That said, officers cannot depart from the mission of the stop to investigate unrelated matters unless additional suspicion of criminal activity arises from the encounter. *Rodriguez*, 575 U.S. at 355. Once an officer completes, or reasonably should have completed, the normal tasks associated with the purpose of the traffic stop (e.g., obtains the driver's information, checks for warrants and proof of insurance, and issues a ticket), the detention should cease unless the officer learns new information that gives "reasonable and articulable suspicion that criminal activity is afoot" so as to justify further investigation. *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020).

"Reasonable suspicion requires more than an 'inarticulate hunch,' but less evidence than what is necessary for either a probable-cause or preponderance-of-the-evidence standard." *United States v. Pope*, Nos. 20-5866/5868, 2021 WL 1383250, at *4 (6th Cir. Apr. 13, 2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (citation omitted)). In forming reasonable suspicion, officers may draw on their "experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

### III. Analysis

**A. Ordering Risper Out of His Vehicle**

Risper concedes that there was a valid basis for the traffic stop. He argues that Golden lacked justification to order him out of his vehicle. Risper acknowledges the general principle in *Mimms* that an officer can order a vehicle occupant to step out of their vehicle during a traffic stop, but he apparently argues that there were no safety concerns here. To lawfully require Risper to exit his vehicle, he contends the officers needed reasonable suspicion of something other than the traffic violation. The Court disagrees.

In *Mimms*, the Supreme Court recognized that all traffic stops are potentially dangerous. *See Mimms*, 434 U.S. at 111 (noting "the inordinate risk confronting an officer as he approaches a person seated in an automobile"); *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (noting that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers"). It also determined that requiring a driver to step out of their vehicle is a "de minimis" intrusion on their personal liberty. *Mimms*, 434 U.S. at 111. Weighing this intrusion against an officer's legitimate safety concerns, the Court concluded that the officer's concerns should prevail. *Id.* Accordingly, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at 111 n.6. Courts have reiterated that principle many times since *Mimms*. *See, e.g.*, *New York v. Class*, 475 U.S. 106, 115 (1986); *United States v. Prigmore*, 15 F.4th 768, 778 (6th Cir. 2021); *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014); *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010); *see also United States v. Conley*, No. 21-1723, 2013 WL 165966, at *5 (6th Cir. Jan 12, 2023) (noting that this principle is "settled law"). These courts do not require reasonable suspicion or a case-specific assessment of safety concerns to permit an officer to order a vehicle occupant out of their vehicle. Instead,

5

they simply require a valid traffic stop. *See Class*, 475 U.S. at 115 ("[O]fficers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon."); *Prigmore*, 15 F.4th at 778 ("Law enforcement may order passengers out of the car during a traffic stop based on the 'weighty interest in officer safety' and 'minimal' intrusion on the passenger's liberty." (quoting *Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997))). Thus, Golden could order Risper out of his vehicle because of the traffic stop. Golden did not need an additional justification for doing so.

Risper argues that the rule in *Mimms* does not apply where officers order a vehicle occupant out of their vehicle for reasons unrelated to the stop. Indeed, "[o]n-scene investigation into other crimes . . . detours from [the] mission" of a traffic stop. *Rodriguez*, 575 U.S. at 356. He contends that Golden ordered Risper out of his vehicle in order to obtain a better look inside. No evidence supports that argument, however. Golden ordered Risper out of his vehicle within seconds after approaching him, as *Mimms* permits. At the motion hearing, Risper referenced Golden's investigative report, in which Golden apparently stated that he ordered Risper out of his vehicle because he saw Risper breathing heavily and thought Risper was nervous. Risper disputes the assertion that he was breathing heavily, and the bodycam video does not show him doing that. But even if Golden's observations about Risper's breathing were incorrect, they do not suggest that Golden was investigating something other than the traffic violation.

Compare this case to *United States v. Whitley*, 34 F.4th 522 (6th Cir. 2022), which is cited by Risper. There, an officer conducting a traffic stop obtained the driver's license, registration, and proof of insurance. *Id.* at 527. While that was happening, another officer noticed a digital scale in the driver's lap. The two officers conferred with one another and decided to investigate

6

the scale. They did not check the driver's documents. Instead, they ordered the driver to step out of his vehicle. *Id.* The Court of Appeals concluded that the officers departed from the original purpose of the stop by ordering the driver out of the vehicle in order to investigate the scale. They needed reasonable suspicion to justify prolonging the stop for that investigation, which they did not have.

Unlike *Whitley*, there is no evidence here that the officers departed from the original purpose of the stop when ordering Risper to exit his vehicle. Although Risper had turned over his driver's license, *Mimms* and the other cases cited above permitted Golden to require Risper to step outside his vehicle while the officers checked Risper's identification. They did not need any other justification for making that demand.

Risper also relies upon *United States v. Lang*, 652 F. Supp. 3d 820 (E.D. Ky. 2023), a case with facts similar to those in *Whitley*. Officers conducting a traffic stop ordered the vehicle occupants to step outside the vehicle because "and only because" the officers wanted to investigate a digital scale that they saw inside the vehicle. *Id.* at 829. In so doing, they embarked on an investigation unrelated to the original purpose of the stop. They needed reasonable suspicion to support that investigation. *Id.* at 832. That case is distinguishable for the same reasons that *Whitley* is distinguishable.

In short, *Whitley* and *Lang* applied the Supreme Court's instruction that an officer cannot prolong a traffic stop to investigate other crimes unless there is reasonable suspicion to support that investigation. *See Rodriguez*, 575 U.S. at 356-57. Without that suspicion, the stop must end "when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. The officers' conduct here did not run afoul of that rule. They could stop Risper because they saw him commit a traffic violation. As part of that stop, they could order him out of his

7

vehicle while verifying his information. There is no evidence that they prolonged his detention in order to investigate some other offense.

Risper also relies upon *United States v. Stepp*, 680 F.3d 651 (6th Cir. 2012), in which officers impermissibly prolonged the duration of a traffic stop by asking the driver "extraneous" questions for several minutes and by waiting for a canine unit to arrive and conduct a dog sniff. *Id.* at 663. None of those circumstances were present here. Thus, the Court is not persuaded that Golden violated Risper's Fourth Amendment rights by ordering him to step out of his vehicle.

For similar reasons, the officers did not need reasonable suspicion to require Risper to step away from the doorway of his vehicle. The logic in *Mimms* justifies Golden's directives. Having Risper step away from his doorway was an even lesser intrusion on his liberty than having him step out of his vehicle. It was also justified by safety concerns. It ensured that Risper would be "denied access to any possible weapon that might be concealed in the interior of the [vehicle]" and it allowed the officers to retain "'command of the situation.'" *Wilson*, 519 U.S. at 414 (quoting *Michigan v. Summers*, 452 U.S. 692, 703 (1981)); *cf. Mimms*, 434 U.S. at 111 (recognizing that, "[r]ather than conversing while standing exposed to moving traffic, [an] officer prudently may prefer to ask the driver of the vehicle to step out of the car *and off onto the shoulder of the road* where the inquiry may be pursued with greater safety to both" (emphasis added)). Thus, Golden could require Risper to move away from his door without having reasonable suspicion that Risper was dangerous or that he had committed an offense other than his traffic violation. Issuing that directive was not a departure from the original mission of the traffic stop and did not violate Risper's Fourth Amendment rights.

### B. Preventing Risper From Closing His Door

Next, Risper contends that Golden violated his Fourth Amendment rights by preventing him from closing his car door. Golden kept his hand on Risper's car door or positioned his body

8

so that the door could not close. According to Risper, the open door gave Morgan an easier line of sight into the vehicle.[4] Risper asked for permission to close his door, but Golden kept his body positioned in a way that prevented Risper from doing so.

Risper cites no authority holding that the driver of a vehicle has a reasonable expectation of privacy in concealing objects that are in plain view when their car door is open. Because Golden could lawfully require Risper to exit his vehicle (and to open his door for that purpose), it follows that the officers could look through his open door without conducting an impermissible search under the Fourth Amendment. *See Harris v. United States*, 390 U.S. 234, 236 (1968) ("Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."). Morgan had a right to be outside the car, and there is no dispute that the gun was within plain view from his position. Also, because Risper had not moved away from the doorway as Golden requested, it was reasonable for Morgan to look inside the vehicle to see whether there were any objects or weapons within Risper's reach that would pose a safety threat to the officers.

Similarly, because the gun was in Morgan's plain view from outside the vehicle while the officers were lawfully detaining Risper, they could seize the gun as evidence of a possible crime. *See Harris*, 390 U.S. at 236. Under Michigan law, it is unlawful to carry a pistol in a vehicle without a firearm license, Mich. Comp. Laws § 750.227(2), and the defendant has the burden of establishing possession of a license, Mich. Comp. Laws § 776.20. They could also seize it temporarily for safety purposes. *See United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003)

---

[4] Although Morgan testified that he believed he would have been able to see the gun with the car door closed, it is not clear to the Court that he would have been able to do so. But even assuming he could only see it with the door open, the outcome is the same. There was no Fourth Amendment violation for the reasons discussed herein.

9

("[T]he plain view exception permits the warrantless seizure of 'objects dangerous in themselves.'" (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 472 (1971))); *accord United States v. Townsend*, 206 F. App'x 444, 449 (6th Cir. 2006).

To the extent Risper argues he was entitled to immediately close his door after exiting his vehicle, he cites no authority for that argument. But even if such authority existed, it would not make a difference here. Risper refused to comply with Golden's lawful commands to move away from his door. By doing so, he prevented anyone from closing the door, including himself.

Risper argues that an officer who opens, or maintains control over, a driver's car door is conducting a search, citing *Class*, 475 U.S. at 107. In *Class*, however, the officer opened a car door and *reached inside the vehicle* to remove papers, thereby "intrud[ing] into the passenger compartment of [the] vehicle." *Id.* at 111. That intrusion into the interior space of the vehicle was the "search," not the officer's handling of the door. *Id.* at 115. By contrast, Golden did not intrude into Risper's vehicle compartment. He did not, as Risper contends, invade the interior space of the vehicle. Thus, *Class* does not aid Risper's argument.

Risper also relies on *United States v. Bradley*, No. 5:19-cr-00007-TBR-1, 2019 WL 4307877 (W.D. Ky. Sept. 11, 2019), in which a court found that simply opening a car door constituted a search of the car. *Id.* at *2. That case is distinguishable because, unlike Golden, the officer there had no grounds for opening the door of the car, which was parked at the defendant's residence. *See id.* at *1. The officer was executing a search warrant for the defendant's home; he did not have a warrant or any other basis for searching the vehicle. *Id.* But as discussed above, Golden could require Risper to exit his vehicle as part of the traffic stop. And Risper agreed to do so. The video shows Risper assisting Golden with opening his door for that purpose. (Golden Bodycam 21:28:21; Morgan Bodycam 21:28:21.) Golden did not open it by himself. Thus, in

10

contrast to the officer in *Bradley*, Golden did not unlawfully search Risper's vehicle by opening the door.

## IV. CONCLUSION

For the foregoing reasons, the Court is not persuaded that the officers violated Risper's Fourth Amendment rights.  Consequently, the Court will deny the motion to suppress evidence.

The Court will enter an order consistent with this Opinion.


Dated: February 13, 2025                    /s/ Hala Y. Jarbou
                                                                                     HALA Y. JARBOU
                                                                                     CHIEF UNITED STATES DISTRICT JUDGE